**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD B. HABECKER,** | : | **CIVIL ACTION NO. 1:07-CV-0196** |
| **DOLORES HABECKER, and** | : | |
| **DOE & JERRY'S BARBECUE** | : | **(Judge Conner)** |
| **COMPANY,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PEERLESS INSURANCE** | : | |
| **COMPANY   and LIBERTY** | : | |
| **MUTUAL INSURANCE COMPANY** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

The matter *sub judice* is a diversity action in which plaintiffs allege that defendant insurance carriers wrongfully denied benefits under a commercial property insurance policy covering plaintiffs' business premises.  Plaintiffs submitted a claim against the policy after a fire that occurred in early 2005.  Following an initial investigation, defendants refused coverage, asserting that plaintiffs had breached material policy terms by failing to cooperate with the investigation.  Plaintiffs subsequently brought this action to enforce their rights to coverage, and defendants filed a motion for summary judgment (Doc. 13) on lack of cooperation grounds.  For the reasons that follow, the motion will be granted.

I.     **Statement of Facts**[1]

In approximately 2000, plaintiffs Gerald and Dolores Habecker

(collectively "the Habeckers"), opened a barbecue business under the

corporate name Doe & Jerry's Barbecue Company ("the Barbecue

Company").  (Doc. 14-3 at 62; Doc. 18, Ex. E at 12; Doc. 18, Ex. G at 11.)[2]  They

leased property in Wormleysburg, Pennsylvania, where the Barbecue Company

operated a restaurant and catering facility.  The business obtained a

commercial property insurance policy from defendant Peerless Insurance

Company ("Peerless").  (See Doc. 14-2 at 6-100; Doc. 14-3 at 1-59.)  The policy

contains the following provisions pertinent to the instant matter:

> **3.     Duties In The Event Of Loss Or Damages**
>     a.     You must see that the following are done in the event
>            of loss or damage to Covered Property:
>
>                                 * * *
>
>        (5)     At our request, give us complete inventories of
>                the damaged and undamaged property.
>                Include quantities, costs, values and amount of
>                loss claimed.
>        (6)     As often as may be reasonably required, permit
>                us to inspect the property proving the loss or

---

[1]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party.  See infra Part II.

[2]Defendants submitted 449 pages of exhibits in support of their motion for summary judgment.  Unfortunately, defendants failed to Bates stamp or otherwise identify individual pages for ease of record reference.  (See Docs. 14-2 to 14-8.)  Accordingly, the court will refer to these documents utilizing the pagination assigned by the Electronic Case Filing system.

damages and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

* * *

(8)     Cooperate with us in the investigation or settlement of the claim.

(Doc. 14-2 § E.3.a, at 55.)[3]

The Habeckers operated the Barbecue Company until January 17, 2005, when an overnight fire damaged the business premises.  (Doc. 14 ¶ 1; Doc. 18 ¶ 1.)  The fire did relatively minor harm to the restaurant building but caused extensive smoke damage to the Barbecue Company's fixtures, equipment, and inventory.  (Doc. 14 ¶ 2; Doc. 18 ¶ 2; Doc. 14-6 at 17-19.)  The Habeckers filed a claim against the Peerless policy the next day, (Doc. 18, Ex. B.), and they cooperated with the *initial* investigation of their claim.  Peerless separately deposed them on March 25, 2005, (Doc. 18, Exs. F, G), and Gerald Habecker ("Habecker") voluntarily submitted to a polygraph test administered by law enforcement officials, (Doc. 14-7 at 11-12).  He furnished the business's security records and arranged for the Barbecue Company's accountant to transmit its financial information to Peerless.  (Doc. 18-2 ¶ 5.)  He also submitted to an

_____

[3]The policy further provides that "[n]o one may bring a legal action against us . . . unless . . . [t]here has been full compliance with all terms" applicable to a covered loss.  (Doc. 14-2 § D.1, at 91)

interview with James Caruso ("Caruso"), a special investigator for Peerless, a few weeks after the fire.  (Doc. 18, Ex. C.)

Peerless retained Bradley Schriver ("Schriver"), an independent cause-and-origin investigator, to identify the source of the fire.  (Doc. 14 ¶ 7; Doc. 18 ¶ 7.)  Schriver visited the restaurant the day after the fire and concluded that it had been intentionally started by dousing several cardboard boxes in a storage room with an accelerant and setting them alight.  (Doc. 14-3 at 61, 68.) Investigations conducted by local police and fire officials reached a similar conclusion.  (Id. at 66.)

The restaurant premises featured a security alarm system that continuously monitored all exterior doors and windows.  Each employee authorized to open or close the restaurant received a unique security code to access the system. (Doc. 14-7 at 8.)  Habecker maintained a list of all employees' codes in his office.  (Id.; Doc. 18, Ex. G at 69.)  Whenever an employee armed or disarmed the system, it recorded the date, time, and identity of the employee.  (Doc. 14-7 at 9.)  Security records from the evening of the fire document no forced entry attempt and indicate that the security code assigned to employee Leann Witman was used to enter the building at 11:40 p.m.  (Id. at 21-22; Doc. 18, Ex. D.)

During the initial investigation, Peerless also retained Tom Baker ("Baker"), an independent claims adjuster, to assess the Habeckers' damages.  (Doc. 14 ¶

4

6; Doc. 18 ¶ 6.)  On January 27, 2005, Habecker and Baker conducted a walk-through inspection of the premises during which they documented the extent of the fire damage.  (Doc. 14 ¶¶ 8-9; Doc. 18 ¶¶ 8-9.)  Baker instructed Habecker to prepare an inventory of equipment, supplies, foodstuffs, and other business property for which he and his wife sought insurance coverage.  (Doc. 14 ¶ 10; Doc. 18 ¶ 10.)  As part of the inventory, Baker specifically requested the manufacturer, age, and model number for all durable goods.  (Doc. 14 ¶ 10; Doc. 18 ¶ 10.)  Baker also cautioned Habecker against discarding any nonperishable articles pending Peerless's coverage decision.  (Doc. 14-6 at 32-33, 139-40.)

Habecker prepared the business inventory during the weeks immediately following his conversation with Baker and electronically saved it on his home computer.  (Id. at 21-22, 42, 141-45.)  He mailed it to Baker upon completion, (Id. at 46), but Baker never received it, (Doc. 14-5 at 6).  On February 24, 2005, Baker sent Habecker a letter stating that he had not received the inventory.  (Id. at 6, 14; Doc. 14-6 at 203.)  He received no reply from Habecker.  (Doc. 14-5 at 11.)  Had Baker received the  inventory, he would have handled it according to his usual practice, which included documenting receipt of it, contacting Peerless for further instruction, and forwarding a copy of it to Peerless.  (Id. at 10-11.)  Peerless did not obtain a copy of it prior to the instant lawsuit.  (Doc. 14-2 ¶ 5, at 2.)  By early May 2005, the Habeckers had not received any insurance

proceeds, and they retained an attorney, who continues to represent them in the instant dispute. Their attorney sent Peerless a notice of representation on May 2, 2005. (Doc. 14-6 at 62-63, 146.)

During the same period, Peerless contacted the Internal Revenue Service ("IRS") for copies of the Barbecue Company's tax records. An IRS official confirmed that the Barbecue Company's file contained potentially pertinent information but would not discuss the content without authorization from the Habeckers. (Id. at 147.) On June 6, 2005, Peerless's counsel sent a letter to the Habeckers' attorney that stated:

> It is . . . my understanding that more than one request has been made of the Habeckers for an inventory of property damaged or destroyed by the fire. The Habeckers need to complete this task. While no final decision has been made in regard to the disposition of this claim, the claim cannot be processed in any event until the insureds provide a complete and accurate inventory.

(Id. at 147-48.) The letter also requested that the Habeckers authorize Peerless to obtain the Barbecue Company's tax information from the IRS. (Id.) Neither the Habeckers nor their attorney responded to the letter. (Doc. 14 ¶¶ 25-26; Doc. 18 ¶¶ 25-26.)

A second letter from Peerless's counsel to the Habeckers' attorney followed on July 11, 2005:

> Since my June 6 correspondence to you, I have heard nothing regarding the requested release of information from the Internal Revenue Service, nor have I heard anything in regard to the inventory of damaged property. Neither the investigation into this incident nor the processing of the Habeckers' claim can proceed

> until these two things are taken care of.  Would you please respond
> to my June 6, 2005 letter at your first opportunity.

(Doc. 14-6 at 155.)  The letter prompted no response from either the Habeckers

or their attorney.  (Doc. 14 ¶¶ 27-28; Doc. 18 ¶¶ 27-28.)

On October 6, 2005, Peerless's counsel transmitted a final letter to the

Habeckers' attorney that read, in pertinent part, as follows:

> It is now the beginning of October and I have not received
> the Internal Revenue records release authorizations, nor have I
> received an inventory from the Habeckers.  In addition, I have not
> received a telephone call or any other explanation giving any
> rationale or reason why my written requests could not be honored.
> The lack of responsiveness has delayed the investigation and
> disposition of this claim.
>
> * * *
>
> Please be advised that at this point, Doe & Jerry's Barbecue is
> in violation of [the policy provisions that impose a duty of
> cooperation,] and the claim for insurance proceeds . . . is hereby
> declined for failure to cooperate.
>
> * * *
>
> . . . [T]he Habeckers have still not completed the basic requirements
> necessary to perfect a claim, e.g., the production of an inventory.
> One possible explanation for this could be that they have decided
> to abandon their claim, an eventuality that is consistent with the
> recent complete lack of responsiveness from the Habeckers.
> You have been placed on notice of the specific grounds for
> the disposition of this claim by Peerless. . . .
> If you have . . . additional information that would be
> important to the coverage determination that has been made,
> please let me know promptly of such items.

(Doc. 14-6 at 156-59.)  This letter, like the previous once, went unanswered.

(Doc. 14 ¶ 30; Doc. 18 ¶ 30.)[4]

        In approximately May 2005, an attorney for the Habeckers' landlord

informed them that the landlord planned to remove damaged articles from the

leased premises.  (Doc. 14-6 at 61.)  Neither the landlord nor the Habeckers

advised Peerless of pending repossession, which the landlord completed in June

2005.  (Id. at 60.)  Peerless alleges that it did not learn of the removal until Gerald

Habecker's deposition on September 27, 2007.  (Doc. 14-2 ¶ 7, at 3; Doc. 14-6 at

61-62.)  A Peerless official testified that insureds are required to retain damaged

property to enable Peerless to assess the value of the loss and to exercise

---

[4]Paragraph 30 of defendants' statement of material facts filed pursuant to Local Rule 56.1 avers that "[n]either the Plaintiffs nor their counsel communicated in any way with Peerless between October 6, 2005 and the filing of their Complaint in this civil action on January 12, 2007.  (Unti Affidavit ¶ 6; McNamara Affidavit ¶ 12)"  (Doc. 14 ¶ 30.)  The Habeckers' attorney responded to this allegation with the following statement:  "The Habeckers were represented by their bankruptcy counsel[,] and that filing constituted a stay of any proceedings involving this claim."  (Doc. 18 ¶ 30.)  Presumably, counsel is referring to the automatic stay that a bankruptcy petition imposes on legal actions against a debtor pursuant to 11 U.S.C. § 362(a).  The Habeckers filed a bankruptcy petition on October 13, 2005, approximately one week after Peerless's counsel sent the letter denying coverage.  (Doc. 14-6 at 156; Doc. 18, Ex. I at 1.)  The response of Habeckers' attorney is puzzling, however, because it does not controvert defendants' contention that the Habeckers ignored the October 6, 2005 letter.  Counsel has not explained why the bankruptcy stay prevented the Habeckers from responding to Peerless's missive or why counsel neglected to inform Peerless of their evolving financial status.  In light of this failure to respond to the facts propounded by Peerless, the averments set forth in Paragraph 30 of defendants' statement of material facts are deemed admitted.  See L.R. 56.1.

salvage rights to the property.[5]  (Doc. 14-2 ¶¶ 2, 9-10, at 1, 3.)  Neither Peerless nor the Habeckers sought to reclaim the property after removal by the landlord.

The Habeckers commenced this action in state court in January 2007, approximately twenty months after they last communicated with Peerless. Defendants removed the action to federal court on February 1, 2007.  Plaintiffs aver that defendants breached their coverage obligations under the policy. Defendants respond that they are excused from coverage by virtue of plaintiffs' lack of cooperation with the loss investigation.  The parties have fully briefed these issues, which are now ripe for disposition.

## II.    Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor

---

[5]The policy's fire provisions require the insured to "protected the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, [and] furnish a complete inventory of the destroyed, damaged, and undamaged property" to Peerless. (Doc. 14-2 at 65.)

of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met

may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.   **Discussion**

The sole issue presently before the court is whether the Habeckers'

alleged failure to provide an inventory and tax authorization excuses Peerless's

coverage obligations.  The identity of the arsonist responsible for the fire plays no

role in this inquiry.  Under Pennsylvania law, an insured has a duty to cooperate

in good faith with an insurer's investigation of a covered loss.  See Kids Wear

Aramingo, Inc. v. Am. Motorists Ins. Co., No. Civ. A. 92-1739, 1992 WL 310296, at

*1 (E.D. Pa. Oct. 21, 1992) (holding that insureds must cooperate with the insurer

in a "reasonable and substantial manner"); Butler Candy Co. v. Springfield Fire &

Marine Ins. Co., 146 A. 135, 138 (Pa. 1929) (stating that an insured's compliance

"is to be determined by reasonableness" and that the insured must engage in

"[a]n honest effort to produce" documents requested by the insurer).  An

insured's failure to cooperate excuses an insurer's coverage obligations if the

breach is material and prejudicial to the insurer's interest.[6]  Brethren Mut. Ins. Co.

v. Thomas, No. 3:04cv1509, 2006 WL 2376248, at *3 (M.D. Pa. Aug. 14, 2006);

Forest City Grant Liberty Assocs. v. Genro II, Inc., 652 A.2d 948, 951 (Pa. Super. Ct.

1995).  The insured's breach must exceed a "mere technical departure" from

the terms of the policy.  Paxton Nat'l Ins. Co., 522 A.2d 531, 532 (Pa. 1987)

(quoting Conroy v. Commercial Cas. Ins. Co., 140 A. 905, 907 (Pa. 1928)).

---

[6]In McCoy v. Travelers Indemnity Company of America, No. 4:CV-00-2246, 2002 U.S. Dist. LEXIS 27431 (M.D. Pa. Feb. 8, 2002), this court suggested that prejudice is essential to excuse an insurer from covering a loss under a third-party policy but is less significant in the context of first-party insurance.  Id. at *14-15 (citing Harary v. Allstate Ins. Co., 988 F. Supp. 93, 102 (E.D.N.Y 1997), aff'd 162 F.3d 1147 (2d Cir. 1998)).  Third-party policies provide redress to innocent individuals harmed by the insured's actions; hence, an immaterial breach by the *insured* should not expunge benefits available to *third parties* harmed by the insured's conduct.  Id.  By contrast, first party policies furnish coverage directly to the insured.  Hence, first party insurers have greater latitude to deny coverage for the insured's non-prejudicial breach because the insured is "in control of [his or her] own fate."  Id. at *15.  Despite this distinction, the McCoy court held that the first-party insurer in that case had demonstrated prejudice resulting from the plaintiff's conduct regardless of whether such a showing was technically required.  Id. at *15-17.
    In the instant matter, the court has not identified any Pennsylvania precedent to espouse the McCoy distinction.  Controlling Pennsylvania cases hold that an insured's breach must result in prejudice without distinguishing between first- and third-party policies.  See, e.g., Paxton Nat'l Ins. Co. v. Brickajlik, 522 A.2d 531, 532 (Pa. 1987) ("In contracts of this kind, to escape liability, the insurer must show that the breach is something more than a mere technical departure from the letter of the bond,—that it is a departure that results in a substantial prejudice and injury to its position in the matter. . . ." (quoting Conroy v. Commercial Cas. Ins. Co., 140 A. 905, 907 (Pa. 1928) (omission in original))); Forest City Grant Liberty Assocs. v. Genro II, Inc., 652 A.2d 948, 951 (Pa. Super. Ct. 1995); see also, e.g., Brethren Mut. Ins. Co. v. Thomas, No. 3:04cv1509, 2006 WL 2376248, at *3 (M.D. Pa. Aug. 14, 2006); Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 427 (E.D. Pa. 2001).  The court will therefore require Peerless to support denial of coverage with a showing a prejudice.

Instead, it must "result[] in a substantial prejudice and injury to the [insurer's] position in the matter." Id.; see also Conway v. State Farm Ins. Co., No. Civ. A. 98-832, 1998 WL 966030, at *1 (E.D. Pa. Nov. 20, 1998) ("[A] material breach by the insured of its contractual duty to cooperate will relieve an insurer from liability under the policy where it prejudices the insurer.")  Whether an insured's actions constitute a material breach of the duty to cooperate is a question of fact. Forest City, 652 A.2d at 951.

This court has previously addressed the duty to cooperate under factual circumstances nearly identical to those of instant case.  In McCoy v. Travelers Indemnity Company of America, No. 4:CV-00-2246, 2002 U.S. Dist. LEXIS 27431 (M.D. Pa. Feb. 8, 2002), an incendiary fire destroyed the plaintiffs' food service business. Id. at *8.  The plaintiffs initially cooperated with the insurer's investigation, signing financial release authorizations and submitting to examinations under oath. Id. at *5-6, 10.  They subsequently ceased cooperation by revoking the releases, denying access to their books, and withholding information about the source of the fire. Id. at *5-6, 9-12.  The plaintiffs brought suit to enforce the policy, and the insurer defended on non-cooperation grounds.  The court held that, despite the plaintiffs' initial assistance, no reasonable jury could have concluded that the plaintiffs had discharged their duty to cooperate. Id. at *12.  The plaintiffs' refusal to cooperate prejudiced the insurer by depriving it of information essential to assess the merits

of the plaintiffs' claim in a timely manner, id. at *15-17, and the court entered summary judgment in favor of the insurer, id. at *18.

A similar disposition is appropriate if an insured fails to provide an inventory of damaged articles. The inventory forms the marrow of an insurance claim, notifying the insurer of the items for which the insured seeks coverage and calculating the estimated loss. An insurer cannot adjust the value of loss without this information and may deny coverage if an insured refuses to produce it. See, e.g., 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 199:39 (3d ed. 1995 & Supp. June 2008) (observing that the failure to provide insurer with information pertaining to loss constitutes breach of the duty of cooperation); 5A John Alan Appleman & Jean Appleman, Insurance Law and Practice, § 3542 (1970 & Cumulative Supp. 2008) (noting that the insured's failure to comply with reasonable requests for production of inventories, books, records, and similar accounting materials may preclude recovery); see also McCoy, 2002 U.S. Dist. LEXIS 27431, at *16; accord Durkin v. State Farm Mut. Ins. Co., 3 F. Supp. 2d 724, 728 (E.D. La. 1997) (granting insurer's motion for summary judgment because the insured did not provide inventory of flood-damaged items), aff'd 141 F.3d 1163 (5th Cir. 1998); Tran v. State Farm Fire & Cas. Co., 961 P.2d 358, 365 (Wash. 1998) (holding that the insurer was prejudiced by the plaintiff's failure to produce financial records and tax returns); DiFranciso v. Chubb Ins. Co., 662 A.2d 1027, 1032 (N.J. Super. Ct. App. Div. 1995) (declaring that the failure to produce books and records of

13

the plaintiffs' business constituted a material breach of the insurance policy);

Happy Hank Auction Co. v. Am. Eagle Fire Ins. Co., 145 N.Y.S.2d 206, 211 (App.

Div. 1955) (proclaiming that a demand for the plaintiff's current inventory

account was material in light of "circumstances tending to excite suspicion").

Turning to the case *sub judice*, it is beyond peradventure that the

inventory requested is critical to an evaluation of the Habeckers' claim and that

their failure to provide it prejudiced Peerless's adjustment of the loss.  Moreover,

the tax record authorizations were reasonable requests likely to produce

information relevant and material to the Habeckers' claim.

The Habeckers' inventory contains information central to their coverage

request.  It includes the manufacturer, date of purchase, and vendor of the

business's durable goods as well as other data crucial to a precise valuation of

the damaged property.  It sets forth a nuanced depiction of business assets.  For

example, it reflects that the Barbecue Company purchased its dining room and

office furnishings as a bulk, prepackaged set; and it specifies precise quantities

of culinary miscellanea such as sheet pans, cutlery, china, and food service

trays.  Plaintiffs have not submitted evidence demonstrating that this information

was available to Peerless from an alternate source.[7]

The Habeckers were informed of the importance of the inventory as early

as January 27, 2007, when Baker instructed Gerald Habecker to prepare it.  They

were repeatedly reminded of it through the four letters collectively sent by Baker

and Peerless stating that no inventory had been received.[8]  Without the

---

[7]The Habeckers rely on Ania v. Allstate Insurance Company, 161 F. Supp. 2d 424 (E.D. Pa. 2001) to assert that an insured's failure to provide financial information does not foreclose insurance coverage.  (Doc. 19 at 6.)  In Ania, the defendant insurers moved for pre-discovery summary judgment on non-cooperation grounds.  Id. at 427.  The plaintiffs refused to submit to examinations under oath and failed to produce unspecified financial documents.  Id. at 428, 431.  The plaintiffs, however, had produced a variety of receipts from the insureds identifying the damaged property for which they sought coverage.  Id. at 428.  The court observed:  "with regard to plaintiffs' alleged failure to turn over all required financial information, [the defendant] does not specify in its motion precisely which financial documents it is seeking, or why it would need to view those documents in order fully to evaluate plaintiffs' claim."  Id.  The court denied the motion in light of these record ambiguities.

Ania is readily distinguishable from the instant matter, in that Peerless sent three unambiguous requests for the inventory and tax records to the Habeckers' counsel.  These documents contain indispensable data reflecting the value and source of the damages sought.  Peerless cannot appraise the Habeckers' loss without this information.  See supra pp. 12-14.  Ania, therefore, does not compel denial of defendants' motion for summary judgment.

[8]Peerless transmitted its first letter to the Habeckers' counsel on June 6, 2005 and denied their claim for coverage on October 6.  Habecker testified that he was unaware that Peerless had requested a duplicate inventory during this time period.  (Doc. 14-6 at 69.)  It is unclear whether this statement derives from mere failure of memory on Habecker's part or whether his attorney neglected to inform him of Peerless's repeated requests.  Regardless, notice of the letters is imputed to the Habeckers because counsel admittedly received them.  (Doc. 14 ¶¶ 26-30; Doc. 18 ¶¶ 26-30); see also In re Color Tile, Inc., 475 F.3d 508, 513 (3d Cir. 2007) ("Where an agent receives notice, that notice is imputed to the

inventory, Peerless lacked the rudimentary information necessary to assess its

insurance exposure and render payment under the policy.[9]

The Habeckers' failure to provide Peerless with authorization to review their

IRS file is similarly prejudicial.  Peerless initially obtained business records from the

Habeckers' accountant, and it contacted the IRS during this investigation.  A IRS

official informed Peerless that the Barbecue Company's tax file contained

_____

principal."); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 28(1) (2000)
("Information imparted to a lawyer during and relating to the representation of a
client is attributed to the client for the purpose of determining the client's rights
and liabilities in matters in which the lawyer represents the client . . . .").

[9]Plaintiffs claim that their failure to provide the requested inventory and
tax authorization does not excuse Peerless from its coverage obligations
because it had access to the site of the fire and had received several
photographs documenting the loss.  This argument is insufficient to satisfy
plaintiffs' summary judgment burden for several reasons.  First, the Peerless policy
places upon the insured the onus of submitting an inventory of damaged
articles.  (See Doc. 14-2 § E.3.a.(5), at 55).  It also requires the insured to provide
Peerless with reasonable access to tax receipts and business records.  (See id. §
E.3.a.(6)).  These provisions are material components of an insurance policy, and
an insured's failure to comply with them substantially prejudices the insurer's
rights.  See supra pp. 12-13 & n.7.  Second, photographs and access to the site
of loss are woefully inadequate to provide an insurer with the information
necessary to conduct a precise damage valuation.  For the insurer to appraise
the loss, it must possess information regarding the age of the damaged property,
its manufacturer, the original cost, purchase discounts, previously claimed
depreciation, and other relevant financial data.  Such information cannot be
gleaned from photographs or on-site inspection and must be provided by the
insured.  Review of an insured's tax records provides information essential to loss
assessment.  It also enables the insurer to evaluate whether the fire was
intentionally set to extract value from a faltering business.  Finally, the Habeckers
have identified no precedent supporting their assertion that photographs and
site access constitute an adequate substitute for an inventory of claimed losses,
and the court's independent research has produced none.  Hence, the
Habeckers' argument is insufficient to avoid entry of summary judgment.

additional pertinent information but refused to provide greater detail without the

Habeckers' consent.  (Doc. 14-6 at 147.)  By refusing to execute an authorization,

the Habeckers deprived Peerless of relevant information about the company's

financial loss.  Peerless could not evaluate all pertinent facets of the Habeckers'

insurance claim without this information, thereby prejudicing it assessment of

covered claims.[10]

The delay resulting from the Habeckers' non-responsiveness is a further

source of prejudice to Peerless.  "An insurer is entitled to receive information

relevant to a loss promptly and while the information is still fresh."  McCoy, 2002

U.S. Dist. LEXIS 27431, at *16.  Excessive delay can result in the further

---

[10]The most troubling aspect of this case is the Habeckers' abrupt halt in
cooperation after retaining counsel.  Their sudden non-responsiveness becomes
increasingly peculiar in light of their extensive *initial* cooperation with Peerless
during the weeks immediately after the fire.  The record is devoid of any
explanation why the Habeckers failed to provide an inventory, nor is there an
explanation for the complete failure to communicate from June 2005 to January
2007, when they initiated the instant action.  Perhaps the Habeckers elected to
engage Peerless in an adversarial posture and employed counsel to assist them
in this task.  If their non-cooperation resulted entirely from such a decision, it is
unfortunate that they misjudged the extent of their obligations under the
insurance policy.  Moreover, it is difficult to ascertain what tactical advantage
the Habeckers gained by failing to respond to Peerless's numerous requests for
the inventory and tax authorization forms.  Transmitting these materials to
Peerless would have required little more than printing them from a home
computer and affixing a postage stamp to them.

Regardless of the reasons for the Habeckers' conduct, their failure to
provide Peerless with the requested documents is certainly lamentable.  Indeed,
the claim would likely have been resolved in an amicable fashion had they
made a good faith attempt to produce the inventory and tax authorization
forms after learning that Peerless had not received them.

deterioration of damaged property, and intervening repair and salvage efforts can render accurate valuation of a loss difficult.  Receipt of timely information is imperative for the insurer to compensate the insured fairly and in an amount consistent with the actual harm sustained.  Here, Peerless promptly commenced an investigation of the Habeckers' claim.  On the day after the fire, Peerless dispatched Schriver to determine its origin.  Nine days later, Habecker met with Caruso and Baker, who instructed him to prepare an inventory.  Further investigation continued through the spring.  The Habeckers, however, went incommunicado after retaining counsel in May 2005.  The next message Peerless received from them came in the form of a complaint, filed approximately twenty months after their attorney last contacted Peerless.  During the interim, the Barbecue Company's landlord cleared the premises of items damaged by the fire.  Peerless never received notice of this repossession, depriving it of the possibility of salvaging damaged items.  This excessive delay prevented Peerless from conducting a fair investigation into the fire, and it has been prejudiced by its inability to value the loss accurately.

The Habeckers' conduct, viewed *in toto*, does not evince the good faith cooperation long-recognized as essential to the insurance adjustment process. Forester v. Teutonia Fire Insurance Company, 60 Pa. Super. 151 (1915), illustrates the importance of collaboration between insurer and insured and provides an ready analogy for the instant case.  In Forester, the plaintiff's premises were

destroyed by fire.  The plaintiff transmitted timely notice of the damage to the insurer but failed to provide information regarding the origin of the fire, the extent of his interest in the property, the cash value of damaged items, and other material information required by the policy.  Id. at 154-55.  Plaintiff then departed the state for an eight-month period, during which he maintained no contact with the insurer.  Id. at 156.  The Pennsylvania Superior Court concluded that the plaintiff's failure to provide material policy information, coupled with his extended period of non-responsiveness, discharged the insurer's coverage obligations:

> By no sort of casuistry can the conclusion be reached in the present case that the company had all the information as to material facts which the furnishing of such a statement as the policy required would have given.  Not only was the statement not furnished, but the plaintiff, by his conduct, as effectively put it out of the power of the company to obtain the information from him as if he had positively refused to furnish it on demand.  Clearly, there was neither strict nor substantial performance of the reasonable condition; nor was there a bona fide effort to perform.

Id. at 157.  The Habeckers, like the Forester plaintiff, have not discharged their insurance duties in good faith.  Distilling the instant action to its essence, the Habeckers seek to compel Peerless to provide an insurance payout without the insureds first identifying the damaged property for which they sought coverage, without providing complete access to the business's records, without keeping Peerless apprised of salvage efforts, and after remaining non-communicative for approximately twenty months.  No reasonable jury could conclude that the

Habeckers assisted Peerless in good faith with the timely investigation of their claim.  They simply cannot expect an insurance payment after failing to comply with Peerless's iterant reasonable requests for material information.  The motion for summary judgment will be granted.[11]

An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       November 14, 2008

---

[11]Defendant Liberty Mutual Insurance Company ("Liberty Mutual") moves for summary judgment on the ground that it is not a party to the Habeckers' insurance contract.  (Doc. 14-2 ¶ 3, at 2.)  The only mention of Liberty Mutual in the record appears in the heading of the insurance policy, where Peerless's corporate logo is printed beside the words "Peerless Insurance / Member of Liberty Mutual Group."  (See Doc. 14-2 at 5.)  Liberty Mutual is not identified as the policy's issuer, and plaintiffs have not described what, if any, corporate relationship exists between Liberty Mutual and Peerless.  The record is devoid of any act performed by Liberty Mutual that allegedly deprived plaintiffs of coverage.  Accordingly, the court will enter summary judgment in favor of Liberty Mutual.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD B. HABECKER,** | : | **CIVIL ACTION NO. 1:07-CV-0196** |
| **DOLORES HABECKER, and** | : | |
| **DOE & JERRY'S BARBECUE** | : | **(Judge Conner)** |
| **COMPANY,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PEERLESS INSURANCE** | : | |
| **COMPANY   and LIBERTY** | : | |
| **MUTUAL INSURANCE COMPANY** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 14th day of November, 2008, upon consideration of defendants' motion for summary judgment (Doc. 13), and, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.    The motion for summary judgment (Doc. 13) is GRANTED.

2.    The Clerk of Court is instructed to enter JUDGMENT in favor of defendants and against plaintiffs on all claims.

3.    The Clerk of Court is instructed to CLOSE this case.

      S/ Christopher C. Conner
     CHRISTOPHER C. CONNER
     United States District Judge